**UNITED STATES COURT OF INTERNATIONAL TRADE**
**NEW YORK, NEW YORK**

| | |
|---|---|
| HELYX GLOBAL TRADING CORP,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; and RODNEY S. SCOTT, *in his official capacity as Commissioner of United States Customs and Border Protection*,<br><br>Defendants. | Case No. 26- 05036 |

# COMPLAINT

Plaintiff, HELYX GLOBAL TRADING CORP (the "Plaintiff"), by and through its undersigned attorney, alleges and claims the following against the Defendants:

## INTRODUCTION

1. Through a series of executive orders, proclamations, and memoranda, the President of the United States declared national emergencies, imposed tariffs on imported merchandise, and modified tariff rates, timing, and scope.
2. The President claimed authority under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701–1708, to impose sweeping tariffs on goods imported into the United States.
3. On February 20, 2026, the United States Supreme Court held that IEEPA does not authorize the President to levy tariffs, and that Congress did not delegate such power in this statute. *Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. (U.S. Feb. 20, 2026) (*affirming V.O.S. Selections, Inc. v. Trump,* 149 F.4th 1312 (Fed, Cir, 2025)).

## JURISDICTION

4. The Court of International Trade has exclusive jurisdiction to hear this action under 28 U.S.C. §1581(i), which gives the Court:

exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--

> (A) revenue from imports or tonnage;
>
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

28 U.S.C. §1581(i)(1). *See also, Learning Resources, Inc.*, slip op. at 5.

5. The Plaintiff is an importer of record, as defined in 19 C.F.R. § 101.1, and its shipments were subjected to tariffs imposed pursuant to the International Emergency Economic Powers Act ("IEEPA") and assessed and collected by U.S. Customs and Border Protection.
6. This action has been commenced within two years of the date that the cause of action first accrues and, as such, it satisfies the timeliness requirement in accordance with 28 U.S.C. § 2636(i).

## PARTIES

7. Plaintiff is an established importer and the importer of records of various goods on which IEEPA duties were paid.
8. Defendant United States of America is the sovereign government of the United States.
9. Defendant United States Customs and Border Protection ("CBP") is an agency within the Department of Homeland Security charged with administering and enforcing the collection

of tariffs, duties, and other import restrictions under the Harmonized Tariff Schedule of the United States. CBP is headquartered in Washington, D.C.

10. Defendant Rodney S. Scott is the Commissioner of U.S. Customs and Border Protection and is sued in his official capacity.

## FACTS

### A. National-Emergency Framework and IEEPA's Limits

11. Congress enacted the National Emergencies Act (NEA) to cabin and supervise any resort to emergency powers; it requires a formal proclamation, publication in the Federal Register, transmittal to Congress, identification of the statutes invoked, and periodic renewal or termination. The NEA also provides expedited procedures for Congress to terminate an emergency.

12. The International Emergency Economic Powers Act (IEEPA) permits the President—upon a proper NEA emergency—to regulate certain international economic transactions to address an "unusual and extraordinary threat" with a substantial foreign source to U.S. national security, foreign policy, or the economy. IEEPA's authorities are triggered only after a NEA-compliant emergency is declared, and they may be exercised only to meet the specified threat. IEEPA does not itself delegate a general tariff-making power.

### B. 2025 Executive Tariff Program and Phased Escalations

13. On February 1, 2025, the President issued Executive Order 14195, imposing a 10 percent ad valorem duty on products of the People's Republic of China, effective 12:01 a.m. eastern time on February 4, 2025; the order was published in the Federal Register on February 7, 2025. The order also directed special treatment for goods admitted to foreign-trade zones on or after that effective date.

14. On March 3, 2025, the White House issued a further amendment (identified in Federal Register materials as Executive Order 14228) increasing the China rate from the initial 10 percent to 20 percent and adjusting related mechanics. Subsequent April 2, 2025 materials addressed application to low-value imports previously moving under *de minimis*.

15. On April 2, 2025, the President issued Executive Order 14257, establishing a reciprocal-tariff framework tied to large and persistent U.S. goods trade deficits, with country-specific ad valorem rates listed in annexes. Unless otherwise provided, the order applied beginning 12:01 a.m. eastern daylight time on April 9, 2025, to goods entered for consumption (or withdrawn from warehouse) on or after that time. Critically, the annexes included a "on the water" exemption clause for goods "loaded onto a vessel at the port of loading and in transit on the final mode of transit before 12:01 a.m. [EDT] on April 9, 2025," subject to enumerated exceptions.

16. On April 9, 2025, an order modified reciprocal rates to reflect trading-partner retaliation and alignment; on April 11, 2025, a presidential memorandum clarified exceptions and carve-outs (including specified HTSUS headings).

17. Through mid-2025, the White House and Federal Register issued follow-on actions adjusting timing and suspensions, including a July 10, 2025 extension of reciprocal-rate modifications to 12:01 a.m. EDT on August 1, 2025, and later updates relating to PRC-specific treatment.

18. On July 30, 2025, the President issued Executive Order 14323, "Addressing Threats to the United States by the Government of Brazil," declaring a national emergency under IEEPA/NEA and imposing an additional duty on Brazilian-origin products. The Federal Register publication (Aug. 5, 2025) confirms an "on the water" exemption provision: goods are exempt if (1) they were loaded at the port of loading and "in transit on the final mode

of transit" before 12:01 a.m. EDT seven days after the order, and (2) they are entered for consumption (or withdrawn from warehouse) before 12:01 a.m. EDT on October 5, 2025.

19. On July 31, 2025, the President amended earlier "northern border" duties to increase the Canadian rate to 35 percent, effective August 1, 2025, as reflected in White House and contemporaneous notices. Also on July 31, 2025, Executive Order 14257 was amended "Further Modifying the Reciprocal Tariffs Rates."

20. On August 6, 2025, the President issued Executive Order 14329 ("Addressing Threats to the United States by the Government of the Russian Federation"). Implementing guidance from U.S. Customs and Border Protection and the Federal Register followed on August 27, 2025, specifying additional duties on "products of India" and setting an "entered before" date for entries already in transit. Trade compliance bulletins summarize the CBP implementation: entries before 12:01 a.m. EDT on September 17, 2025, could qualify for prior rates.

21. In *AGS Co. Automotive Solutions v. U.S. Customs and Border Protection*, et al., No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("AGS"), a three-judge panel of this Court confirmed its authority to order reliquidation of entries subject to the IEEPA duties. Id. In a related matter, the Government represented that it "will not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection*, et al., No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025).

22. Through subsequent declarations and executive orders, the President modified the IEEPA tariff regime until the U.S. Supreme Court held that the imposition of these tariffs was unconstitutional. *Learning Resources, Inc.*, slip op. at 20. CBP announced on February 22,2026 that it would cease applying the IEEPA tariffs HTSUS numbers to imports on

goods "entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026."[1]

23. The Plaintiff seeks relief in the form of a refund of all duties previously paid, and a declaration that no further duties are owed, with respect to amounts assessed and collected by U.S. Customs and Border Protection pursuant to the Executive Orders issued under IEEPA.

**C. The Supreme Court has confirmed that the IEEPA duties lack statutory authorization.**

24. On May 28, 2025, a three-judge panel of this Court entered summary judgment in favor of the plaintiffs in *V.O.S. Selections* and permanently enjoined the Government from continuing to assess or collect the IEEPA duties challenged in that action. The Government appealed that ruling to the United States Court of Appeals for the Federal Circuit.

25. The Federal Circuit stayed this Court's judgment and injunction pending appeal and established an expedited schedule for briefing and argument.

26. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's determination that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), cert. granted, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

27. In a separate action brought by a different group of importers, the United States District Court for the District of Columbia likewise concluded that IEEPA does not authorize the imposition of tariffs. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C.

---

[1] U.S. Customs and Border Protection, *CSMS # 67834313 – Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026), available at *GovDelivery*, https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2 (last visited Feb. 26, 2026) (providing CBP guidance on termination of IEEPA tariff collection).

2025), cert. granted before judgment, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That ruling was subsequently appealed to the Court of Appeals for the D.C. Circuit. Before the D.C. Circuit conducted oral argument, however, the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The matters were consolidated, and argument was held on November 5, 2025.

28. On February 20, 2026, the Supreme Court issued a consolidated opinion, holding unequivocally that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.

**D. Plaintiff and the 2025 tariff program**

29. Plaintiff's imports are subject to IEEPA Duties entered the United States under new HTSUS codes. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the IEEPA Tariff Orders.

30. Plaintiff brings this action to set aside and enjoin the challenged duties, and to recover the duties paid under the challenged Executive Orders.

## STATEMENT OF CLAIMS

**Count I: Refund of IEEPA Tariffs.**

31. The allegations of paragraphs 1 through 30 are incorporated by reference and restated as if fully set forth herein.

32. In *Learning Resources*, the Supreme Court addressed challenges to the President's authority to impose tariffs under IEEPA, as well as this Court's judgment and the Federal Circuit's affirmance of this Court's decision in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), which held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., by imposing tariffs on imported goods.

33. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Court's words, "our task is to decide only whether the power to 'regulate . . . importation[]' as granted to the President in IEEPA embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decisions, which in turn had affirmed this Court's ruling on the merits invalidating the IEEPA tariffs. *Id.* at 21.

34. The Challenged Tariff Orders purport to impose duties and to modify the Harmonized Tariff Schedule of the United States solely pursuant to IEEPA.

35. In its motion to the Federal Circuit in *V.O.S. Selections* seeking a stay of this Court's judgments, the Government confirmed that "if tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

36. Defendant has also represented that it "would not oppose the Court's authority to order reliquidation of entries of merchandise subject to the" IEEPA tariffs to avoid an injunction of liquidation. *Princess Awesome, LLC v. U.S. Customs & Border Prot.*, Court No. 25-00078, Joint Stipulation ¶ 2, ECF No. 17 (Ct. Int'l Trade May 28, 2025).

37. Defendant has also represented that it does "not oppose the reliquidation of any entries of goods subject to IEEPA duties paid by plaintiffs that are ultimately found to be unlawful after appeal," adding that plaintiffs were "guaranteed payment … should the Court's decision be upheld," in successfully moving for a stay of a district court's order invalidating the IEEPA tariffs.

38. Because of these representations in court filings made to obtain and avoid judicial intervention, Defendant is judicially estopped from contesting this Court's authority to

order IEEPA-tariff refunds. *AGS Co. Automotive Sols.*, 2025 WL 3634261, at *2–3; *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

39. This Court is bound by the Supreme Court's decision in *Learning Resources* and, as a result of that decision, should order refunds of all IEEPA duties paid by Plaintiff, together with interest as provided by law.

40. Plaintiff is entitled to a refund of the IEEPA tariffs that it paid to Customs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court grant the following relief:

a. Order CBP to reliquidate any of Plaintiff's entries of imported merchandise that were liquidated subject to IEEPA tariffs and for the United States to refund to Plaintiff all IEEPA tariffs paid thereon, together with interest as provided by law;

b. Order the United States to refund to Plaintiff the IEEPA duties collected on unliquidated entries, with interest as provided by law;

a. Award Plaintiff other such damages as are appropriate;

b. Award Plaintiff attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and any other applicable law; and

c. Grant any such other relief as this Court may deem just or proper.

Dated: November 5, 2026

Respectfully Submitted,

/s/ Vinicius Adam, Esq.

Vinicius Adam
VAdam Law
511 SE 5th Ave., Suite 104
Fort Lauderdale, FL 33301
Phone: (954) 451-0792
Fax: (267) 430-8862
vinicius@vadamlaw.com
service@vadamlaw.com
Attorney for HELYX GLOBAL TRADING CORP